IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| LARRY RELF, on behalf of himself and all others similarly situated, | ) ) ) | Case No.: _____ |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CLASS REPRESENTATION |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, J.D. POWER & ASSOCIATES, and MITCHELL INTERNATIONAL, INC., | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Larry Relf, on behalf of himself and all others similarly situated ("**Plaintiff**"), by and through the undersigned counsel, files this Class Action Complaint against Defendants, State Farm Mutual Automobile Insurance Company ("**State Farm**"), J.D. Power & Associates ("**J.D. Power**"), and Mitchell International, Inc. ("**Mitchell**") (collectively, "**Defendants**"), and states:

## NATURE OF THE ACTION

1.      This Georgia class action arises from Defendants' systemic and intentionally wrongful and improper valuation of total losses involving the vehicles of State Farm first party insureds.

2.      State Farm has spent many tens of millions of dollars to market itself as a fair and honest insurance company. However, State Farm and its co-conspirators, Mitchell and J.D. Power, are not fair and honest in providing valuations to State Farm insureds whose vehicles have been involved in an accident and are determined to be a total loss.

3.      Through its auto insurance policy contracts issued in the state of Georgia (the "**Policies**), State Farm has agreed to provide, *inter alia*, collision coverage for losses resulting from damage to insureds' vehicles. The State Farm Policy provides for adjustment and settlement of first party total loss claims on the basis of actual cash value or replacement. If the insurer determines the insured vehicle to be a total loss, State Farm must pay either a "cash equivalent settlement" or replace the insured vehicle. *See*, Ga. Comp. R. & Regs. r. 120-2-52.06 (The "**Total loss Regulation**").

4.      As alleged hereafter, J.D. Power and Mitchell have formed a joint partnership to provide total loss valuation reports to insurers such as State Farm. J.D. Power and Mitchell call these reports Work Center Total Loss ("**WCTL**") Vehicle Valuation Reports.

5.      Typically, insurers contract with Mitchell to receive the WCTL Reports prepared by the joint partnership.

6.      Specifically, State Farm has contracted with Mitchell to receive WCTL Reports to determine the "Market Value" of a total loss vehicle and the "Settlement Value" after any applicable deductible.  Through this joint partnership and Mitchell's agreement with State Farm, State Farm, Mitchell and J.D. Power have engaged in a scheme to artificially deflate the value of the total loss claims to pay first party insureds less than the actual pre-loss value of the total loss vehicle.

7.      Plaintiff and the putative Class are State Farm automobile insurance Policy holders whose vehicles State Farm determined to be a total loss, and who have been subject to State Farm, Mitchell and J.D. Power's scheme to artificially deflate the value of their total loss claims.

2

8.      When it entered into the Policies at issue in this case with Class Members, State Farm was aware, but failed to disclose to Plaintiff, that its WCTL Valuation System utilized to determine the WCTL Valuation would wrongfully under value total loss vehicles. Through this scheme, State Farm, Mitchell and J.D. Power have engaged in unlawful conduct in violation of Georgia law, common law and their respective contractual obligations, which have uniformly damaged State Farm insureds in Georgia in a readily ascertainable dollar amount.

## PARTIES, JURISDICTION AND VENUE

9.      Plaintiff, Larry Relf, is an adult citizen of Columbus, Muscogee County, Georgia.

10.     Plaintiff brings this action in his individual capacity and on behalf of the Class of all other persons similarly situated in the state of Georgia.

11.     Defendant State Farm Mutual Automobile Insurance Company is a foreign profit corporation incorporated under the laws of the state of Illinois with its principal place of business in Bloomington, Illinois. State Farm issued an automobile liability insurance Policy No. 253 1177-D19-11B, including coverage for first-party total loss claims, to Plaintiff Relf. The Policy was in force on the date of the total loss at issue. State Farm has issued such automobile liability Policies to many thousands of other insureds in Georgia.

12.     Defendant J.D. Power & Associates is incorporated under the laws of the state of Delaware and has its principal place of business in Westlake, California.  J.D. Power has entered into a joint partnership with Mitchell to prepare and provide to numerous national insurers such as State Farm purported valuations for total loss vehicles. J.D. Power and Mitchell have received very substantial payments from State Farm and other insurers for such valuations.

13.     Defendant Mitchell International, Inc. is incorporated under the laws of the state of Delaware and has its principal place of business in San Diego, California.  Mitchell has

entered into a joint partnership with J.D. Power to prepare and provide to numerous national insurers, such as State Farm, purported valuations for total loss vehicles.

14.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) in that the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which Members of the Class are citizens of a state different from each of the Defendants.

15.      Venue is proper pursuant to 28 U.S.C. §1391 in that Plaintiff resides in this District, many of the acts and transactions giving rise to this action occurred in this District, Defendants are authorized to conduct business, or actually conduct business, in this District, have intentionally availed themselves of the laws and markets within this District through distribution and sale of their products and services (insurance policies and total loss valuations, respectively) in this District, do substantial business in this District, and are subject to personal jurisdiction in this District.

## GENERAL FACTUAL ALLEGATIONS

### The Georgia Total Loss Statute

16.      The Georgia Total Loss Regulation provides an insurer with the alternatives of paying a "cash equivalent settlement" or replacing the insured vehicle in the case of a first party total loss claim.  Ga. Comp. R. & Regs. r. 120-2-52.06.

17.      The Total Loss Regulation provides four alternative methods for payment of a cash equivalent settlement:

(1)      Cost of two or more comparable vehicles, based upon dealer sales prices, any established printed automobile sales publications or newspapers within either 50 or 100 miles as specified in Sections (a)(1) and (a)(2) of the Regulation;

(2)     One of two or more quotations obtained by the insurer from licensed automobile dealers where Section (a)(1) and (a)(2) are inapplicable (Section (a)(3));

(3)     Any source for determining statistically valid fair market values in electronic or printed format which meet specified criteria (Section (a)(4)). This section authorizes an insurer to use nationally recognized guidebooks such as the NADA (National Automobile Dealer Association), Kelley Blue Book, or Black Book Guidebooks.

18.     State Farm purports to use WCTL Valuations pursuant to Section (a)(4).

19.     However, as alleged herein, the WCTL methodology used by Defendants is statistically invalid and, therefore, directly violates the Georgia Total Loss Regulations and, specifically, Section (a)(4).

20.     Plaintiff does not assert a private right of action under Georgia's Total Loss Regulations. Rather, Plaintiff's breach of contract claim is based upon (1) State Farm's use of WCTL Vehicle Valuation Reports, which utilize statistically invalid methodologies, algorithms, values or computations when determining total loss valuations in Georgia, and (2) State Farm's failure to adjust total loss claims in the manner required by the Georgia Total Loss Regulations.

21.     As a condition of doing business in Georgia, State Farm's insurance Policies and claim adjustment practices must comply with the Georgia Total Loss Regulation. State Farm's failure to so comply is a breach of its insurance Policies.

### The Mitchell and J.D. Power Partnership

22.     Mitchell and J.D. Power entered into a joint partnership to provide WCTL Vehicle Valuation Reports to insurers, including State Farm. As explained in detail below, WCTL Vehicle Valuation Reports include purported market values of total loss vehicles based upon improper and unlawful methodologies.

23.     The partnership between Mitchell and J.D. Power is described in the first paragraph of the WCTL Valuation Methodology Explanation as follows:

> WorkCenter Total Loss was built through a joint partnership between J.D. Power and Associates vehicle valuation division Power Information Network (P.I.N.) and Mitchell International, a leading provider of claims processing solutions to private passenger insurers.

*Id.* at ¶ 1.

24.     Additionally, WCTL Vehicle Valuation Reports specifically bear the names of both J.D. Power and Mitchell on the first page of each Report.

25.     Each WCTL Vehicle Valuation Report contains a Vehicle Valuation Methodology Explanation, which is located on the last page of each WCTL Vehicle Valuation Report. A true and correct copy of the WCTL Vehicle Valuation Methodology Explanation is attached and incorporated herein as Exhibit A.

### The WCTL Methodology

26.     The WCTL Valuation Methodology assigns actual cash values for total loss vehicles in an amount that is significantly lower than those assigned by published and publicly available valuation models, such as NADA, Blackbook, and Kelly Bluebook.

27.     The WCTL Valuation Methodology is explained in Exhibit A as a five-step process used to "produce accurate and easy-to-understand vehicle valuations."

28.     This five-step process includes:

Step 1 – Locate Comparable Vehicles

Step 2 – Adjust Comparable Vehicles

Step 3 – Calculate Base Vehicle Value

Step 4 – Calculate Loss Vehicle Adjustments

Step 5 – Calculate the Market Value

Exhibit A.

29.     None of these steps relating to comparable vehicles, calculating base values or making condition adjustments (step 4) are based on statistically valid methodologies, algorithms, values or computations. Each step is, in fact, statistically invalid and does not result in a proper valuation for total loss vehicles in Georgia.

30.     Specifically, the WCTL Valuation Methodology for identifying "comparable" vehicles and for making purported "equating" adjustments for equipment, options and mileage are statistically invalid.

31.     In addition, the Methodology for making downward condition adjustments, which is a major aspect of the fraudulent scheme to under-value total losses, is completely invalid.

32.     The dollar amounts assigned to condition adjustments in the WCTL Vehicle Valuation Reports are wholly arbitrary and are not based on any statistical, objective, valid, or verifiable data. Accordingly, all such downward condition deductions are improper in all respects and should be disregarded in valuing a State Farm insured's total loss vehicle.

33.     The intended and wrongful result of the five steps and sub-steps included in Exhibit A is that total loss vehicles are undervalued, and State Farm insureds' total loss claims are underpaid. This underpayment is a detriment to State Farm insureds, including Plaintiff, and a benefit to Defendants.  Rather than paying Plaintiff and Class Members the proper sum of money for their total loss vehicles, State Farm has retained significant funds in the millions of dollars by underpaying Plaintiff and Class Members for the value of their total loss vehicles.

34.     As explained above, the State Farm Policies, as subject to Georgia's Total Loss Statute, require the payment of a cash equivalent settlement for comparable automobiles. Nationally recognized Guidebooks (NADA, Kelley Blue Book and Black Book) provide a

statistically valid basis for calculating the amount of such settlements. By contrast, the WCTL Vehicle Valuation Reports routinely provide State Farm total loss vehicle values which are *not intended* to yield a value for comparable vehicles, but are calculated to yield a substantially lesser amount.

35.     The Market Values in the WCTL Valuations are known by State Farm to be regularly, materially and substantially lower than the values for comparable vehicles, and to deny insureds, such as Plaintiff and the Class, a value amount sufficient for its insureds to purchase a comparable replacement vehicle.

36.     The substantial majority of State Farm's first-party total loss claims in Georgia are settled on the basis of the WCTL Valuations.

### State Farm's Use of the Unlawful WCTL Valuations

37.     State Farm contracted with Mitchell to receive the WCTL Reports.

38.     J.D. Power and Mitchell provided State Farm with WCTL Valuations for the total loss vehicles of the Plaintiff and the Class.

39.     State Farm actually utilizes the WCTL Vehicle Valuation Reports to establish purported market and settlement values for total loss vehicles in Georgia.

40.     The Market Values, including negative condition adjustments identified in the WCTL Vehicle Valuation Reports for vehicles of Plaintiff and Class Members, constitute a significant underpayment of such total loss claims, and a breach of State Farm's obligation under its Policies in Georgia and a violation of the Georgia Total Loss Regulation.

41.     State Farm has actual knowledge that WCTL Vehicle Valuation Reports are statistically invalid and unlawful.

8

42.     State Farm has suppressed and concealed material facts relating to Mitchell's improper WCTL Valuation System and its pre-existing scheme in conspiracy with J.D. Power and Mitchell to intentionally undervalue automobile property claims, including those of Plaintiff and the Class. Specifically, State Farm concealed from Plaintiff that its purported total loss valuations were based upon the statistically invalid and unlawful WCTL Valuation Methodology.

43.     State Farm has knowingly and intentionally acted in bad faith towards its Georgia insureds.

### Prior Litigation and Plausibility

44.     Plaintiff's allegations regarding the invalidity of the WCTL Valuation Methodology are plausible. In a related case filed in the U.S. District Court for the Eastern District of Oklahoma, *Hamon v. Farmers Insurance Company, Inc., et al.*, Case No. 6:14-CV-00161-SPS, the Court previously denied motions filed by J.D. Power and Mitchell to dismiss the *Hamon* Third Amended Complaint, which asserted the same substantive allegations.

45.     The invalidity of the WCTL Valuations and the corresponding Methodology have been the subject of discovery and detailed expert reports in the *Hamon* action, at least some of which are subject to a protective order. Were the *Hamon* discovery and *Hamon* expert reports regarding the invalidity of WCTL Valuations not subject to a Protective Order in that case, Plaintiff and the Class would make more detailed allegations regarding the invalidity of the Methodology including, specifically -- but not exclusively -- Defendants' selection of "comparable" vehicles, "projected sold adjustments," and "condition adjustments." Indeed, the Third Amended Complaint in the *Hamon* action included such allegations.

46.     Out of an abundance of caution regarding the *Hamon* Protective Order, Plaintiff intentionally has limited the facts alleged herein regarding the statistical invalidity of the WCTL Valuation Methodology. Nonetheless, the *Hamon* expert reports and related discovery obtained by Plaintiff *Hamon* establish that J.D. Power and Mitchell are fully on notice of the plausibility of the claims and of the issues relating to WCTL Valuations. The *Hamon* Protective Order does not preclude J.D. Power and Mitchell from providing Plaintiff *Hamon's* expert reports to State Farm in this action.

## **PLAINTIFF'S FACTUAL ALLEGATIONS**

47.     Plaintiff Larry Relf was the owner and insured of a 2006 Pontiac Torrent (the "**Vehicle**").

48.     Plaintiff obtained automobile liability insurance coverage, including collision, for his Vehicle from State Farm under Policy Number 253 1177-D19-11B, which provided coverage for the Vehicle.

49.     Following an automobile accident with another vehicle operated by a third party, on December 19, 2014, State Farm determined that Plaintiff's Vehicle was a "total loss."

50.     The terms of State Farm's Policy issued to Plaintiff are not individualized, unique or specific to Relf. Plaintiff's Policy is the same standard form Georgia auto Policy that State Farm uses for all of its Georgia insureds with comprehensive coverage.

51.     J.D. Power and Mitchell provided State Farm with a WCTL Valuation for Plaintiff's vehicle. A true and correct copy of Plaintiff's WCTL Vehicle Valuation Report is attached hereto and incorporated herein as Exhibit B.

52.     Plaintiff's WCTL Vehicle Valuation Report purports to state a "Base Value" for his Vehicle in the amount of $6,646.99, and a "Market Value" of $6,348.22 after a negative

condition adjustment in the amount of $298.77 before applying his deductible in the amount of $500.00. Plaintiff's WCTL Valuation deprived him of approximately $298.77, based upon the statistically invalid downward condition adjustment.

## CLASS ALLEGATIONS

53.     Plaintiff brings this Class Action on behalf of himself and all others similarly situated, for all claims alleged herein, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Class consists of:

> All persons and entities that have made first-party claims since December 12, 2012 under an automobile insurance policy issued within the state of Georgia by State Farm, whose vehicles were declared a total loss by State Farm, and (a) were settled using the J.D. Power and Mitchell's WCTL Valuation System, and (b) included a downward or negative condition adjustment based upon a WCTL Vehicle Valuation Report.

54.     Excluded from the Class are Defendants, State Farm, J.D. Power, and Mitchell, all related entities, subsidiaries or affiliates of said Defendants, any entity in which said Defendants have a controlling interest, and any and all of said Defendants' employees, affiliates, legal representatives, heirs, successors, or assignees.

55.     Also excluded from the Class is any person or entity that has previously commenced and resolved a lawsuit against said Defendants arising out of the subject matter of this lawsuit, as well as the Judge assigned to this case, and any member of the Judge's immediate family.

56.     This Class consists of Georgia insureds whose total loss claims were reduced by negative or downward condition adjustments.

57.     **Numerosity:** The Class is so numerous that joinder of all affected persons would be impracticable. Although the exact number of Class Members is unknown to Plaintiff, the

Georgia Class is estimated to comprise many thousands of people who have sustained total losses to their vehicles while insured by State Farm.

58.    **Commonality:** Numerous questions of law and fact are common to Plaintiff and the Class, and predominate over any individual questions. These legal and factual questions include, but are not limited to:

a.   Whether State Farm failed to properly investigate and determine that WCTL Valuations are statistically invalid;

b.   Whether State Farm has actual knowledge that WCTL Valuations are statistically invalid;

c.   Whether Georgia law required State Farm to pay actual cash value to its Georgia insureds;

d.   Whether State Farm's Policy required it to pay actual cash value to its Georgia insureds;

e.   Whether State Farm breached its contracts of insurance with its Georgia insureds by improperly underpaying total loss claims through the use of statistically invalid J.D. Power/Mitchell WCTL Valuations;

f.   Whether State Farm failed to pay actual cash value to its Georgia insureds;

g.   Whether WCTL Valuations represent the actual cash value of the vehicles at the time of the loss;

h.   Whether State Farm has intentionally and systemically underpaid total loss claims to Plaintiff and the Class by using statistically invalid WCTL Valuations;

i.   Whether Plaintiff and the Class have sustained damages;

j. Whether Defendants have been unjustly enriched as a result of the scheme described herein; and,

k. Whether State Farm, J.D. Power and Mitchell have conspired, as alleged herein.

59. **Typicality:** Plaintiff's claims are typical of the claims of the Class Members, as Plaintiff and all Members of the Class have suffered damages as a result of Defendants' unlawful and deceptive scheme of settling total loss vehicle claims for substantially less than the actual replacement costs of such vehicles. Specifically, the total loss claims of the Class Members were adjusted by State Farm based upon WCTL Valuations. The same discovery and evidence that would be used to support Plaintiff's claims will be used to support the claims of the Members of the Class.

60. **Adequacy of Representation:** Plaintiff will fully and adequately represent and protect the interests of the Class Members because they share common injuries as a result of Defendants' conduct that is applicable to all Members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interests that are contrary to or in conflict with those of the Class they seek to represent.

61. **Predominance and Superiority**: This action is properly maintained as a Class Action pursuant to Rule 1.220(b)(3) because questions of law and fact common to Plaintiff's claims and the claims of the Members of the Class predominate over questions of law and fact affecting only individual Members of the Class, such that a Class Action is superior to other methods for the fair and efficient adjudication of this controversy. The issues in relation to

Plaintiff's claims are similar to the issues relating to the claims of the other Members of the Class, such that a Class Action provides a far more efficient vehicle to resolve the claims rather than a myriad of separate lawsuits. Accordingly, for most Class Members, a Class Action is the only mechanism by which they could reasonably expect to vindicate their rights. Certification of the Class under Rule 1.220(b)(3) is also supported by the following considerations:

a. The relatively small amount of damages that Members of the Class have suffered on an individual basis would not justify the prosecution of separate lawsuits; and

b. Counsel in this class action are not aware of any other earlier litigation against Defendants to which any other Members of the Class are a party and in which any question of law or fact controverted in the subject action is to be adjudicated.

c. By virtue of Defendants' efforts to conceal their scheme, many Class Members may not even be aware that they have claims against Defendants.

d. The prosecution of separate actions by individual Members of the Class would create a risk of inconsistent and varying adjudications concerning the subject of this action.

e. Class treatment of predominating common questions of law and fact is superior to multiple individual actions because it would conserve the resources of the courts and the litigants and further the efficient adjudication of the Class Member's claims.

f. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action.

### A.   Damages Calculations for the Class

62.     Calculation of damages for the Class is readily manageable. State Farm maintains specific information in its electronic database relating to first-party total loss claims, identifying each claim in the amount of any negative or downward condition adjustment on each such claim.

63.     In addition, State Farm maintains aggregate data on the total amount of negative or downward condition adjustments in Georgia (and other states) on an annual basis.

64.     Accordingly, when the Class establishes that all of the State Farm negative or downward condition adjustments are statistically invalid, then each Member of the Class will be entitled to a refund in the full amount of any such condition adjustment. As stated, that amount can be readily determined on an individual basis for each State Farm first-party insured as well as on an aggregate basis.

65.     All of the damages claimed in this action on a Class-wide basis are readily and easily ascertainable from the State Farm electronic database relating to its Georgia total loss claims.

66.     Defendants have acted, or refused to act, in a manner that applies generally to the Class, such that final injunctive relief is appropriate as to the Class as a whole.

**Count I – Breach of Contract**
**(Against Defendant State Farm)**

67.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 66 as though fully set forth herein.

68.     The State Farm Policy issued to Plaintiff constitutes a valid and binding contract.

69.     State Farm has breached its Policy with Plaintiff in multiple ways, resulting in the material underpayment of Plaintiff's total loss claims, which include, but are not limited to: (a) failure to properly investigate and confirm the statistical validity of the WCTL Valuation

Methodology; (b) improper delegation of its obligation to value total loss vehicles, including Plaintiff's vehicle, to Mitchell; and (c) wrongful failure to properly adjust and pay the amount due and owed to Plaintiff for his total loss, sufficient for Plaintiff to obtain a comparable replacement vehicle.

70.     State Farm's breach proximately caused Plaintiff's actual damages and the actual damages of the Class. Thus, State Farm is liable for compensatory, consequential and incidental damages flowing from its breach of the Policies, as well as attorneys' fees and interest.

71.     This claim applies to all Class Members.

## Count II – Bad Faith
### (Against Defendant State Farm)

72.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 66 as though fully set forth herein.

73.     The Policies obligated State Farm to properly and reasonably investigate the fair value of the total losses sustained by each such policyholder, including Plaintiff, and then pay that amount in a timely manner. The Policies also obligated State Farm to act in good faith and to deal fairly with Plaintiff in handling and adjusting his total loss claim.

74.     Instead of properly investigating and paying Plaintiff's total loss claim, State Farm contracted with J.D. Power and Mitchell and utilized the WCTL Valuations for the wrongful and bad faith purpose of intentionally and improperly reducing total loss payments to Plaintiff and the Class, in an improper attempt to save money at the expense of State Farm insureds, including Plaintiff and the Class.

75.     State Farm has actual knowledge that the WCTL Valuation Methodology is statistically invalid.

76.     State Farm's conduct in "low balling" Plaintiff's claim, intentionally undervaluing Plaintiff's claim, and withholding the full value of that claim, is unreasonable and unjustifiable under the circumstances, and constitutes bad faith under Georgia law.

77.     State Farm has acted in bad faith in adjusting Plaintiff's claim and the total loss claims of Class Members in a systemic and uniform manner by making statistically invalid downward condition adjustments based upon WCTL Valuations.

78.     Plaintiff has suffered damages as a direct and proximate result of such unreasonable, bad faith conduct on the part of State Farm and is, therefore, entitled to recover compensatory and punitive damages, as well as any other such damages, costs or attorneys' fees Plaintiff may be entitled under Georgia law.

79.     This claim applies to all Class Members.

## Count III – Tortious Interference with Performance of a Contract
## (Against Defendants J.D. Power & Associates and Mitchell International, Inc.)

80.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 66 as though fully set forth herein.

81.     The Policies obligated State Farm to properly investigate the value of Plaintiff's total loss claim using a fair and statistically valid valuation system or methodology, and then to properly pay Plaintiff the appropriate value of his total loss.

82.     At all times relevant hereto, J.D. Power and Mitchell had knowledge that State Farm entered into such Policies with its insureds and that the Policies obligated State Farm to promptly and properly pay total loss claims. This knowledge is demonstrated by the fact that J.D. Power and Mitchell prepared the WCTL Vehicle Valuation Report, which specifically identified Plaintiff and specifically valued Plaintiff's vehicle.

83.     J.D. Power and Mitchell had actual knowledge that State Farm used the WCTL Valuations to adjust the total loss claims of State Farm insureds.

84.     J.D. Power and Mitchell also had actual knowledge that State Farm typically would refuse to increase total loss valuations beyond the WCTL Valuations and that State Farm settled the majority of its total loss claims based upon WCTL Valuations provided by J.D. Power and Mitchell.

85.     J.D. Power and Mitchell wrongfully interfered with State Farm's contractual obligations to Plaintiff by knowingly and intentionally selling to State Farm a statistically invalid and wholly arbitrary total loss valuation product for the specific purpose of enabling State Farm to underpay the claims of total loss insureds, including Plaintiff.

86.     State Farm's breaches that were caused by Power and Mitchell's unjustified, intentional and malicious interference with Plaintiff's contractual rights under the Policy include: (a) failing to properly value Plaintiff's total loss; (b) using arbitrary and statistically invalid methodology to value Plaintiff's total loss claim; and (c) causing State Farm to fail to pay the proper amount due and owed to Plaintiff.

87.     Plaintiff suffered damages as a proximate result of J.D. Power and Mitchell's improper WCTL Valuations and resulting tortious interference with the contractual relationship between State Farm and Plaintiff and the Class. Therefore, Plaintiff is entitled to recover compensatory and punitive damages, as well as any other such damages, costs or attorneys' fees to which he may be entitled under Georgia law.

88.     This claim applies to all Class Members.

**Count IV – Breach of Contract Arising from Plaintiff's Status as**
**Third-Party Beneficiary of the Agreement between Power/Mitchell and State Farm**
**(Against Defendants J.D. Power & Associates and Mitchell International, Inc.)**

89.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 66 as though fully set forth herein.

90.     At all times relevant hereto, Mitchell, through its joint venture with J.D. Power, contracted to provide State Farm with total loss valuations (the "**Agreement**"). The intended purpose of this Agreement was to outsource State Farm's valuation of total loss claims for the purpose of satisfying the obligations of State Farm to value and pay total loss claims.

91.     As insureds for whom valuations were prepared under this Agreement, Plaintiff and the Class are intended beneficiaries of the Agreement between State Farm and Mitchell, and are entitled to sue for breach of that Agreement.

92.     Plaintiff alleges that J.D. Power and Mitchell breached this Agreement by providing State Farm with total loss valuations that were not statistically valid and were wholly arbitrary in the manner in which State Farm valued total losses, including Plaintiff's total loss. The improper WCTL Valuations were supplied to State Farm by Mitchell in the course of business for the purported direct benefit of Plaintiff and the Class.

93.     Mitchell's breach of its Agreement to provide valid total loss valuations to State Farm proximately caused damage to Plaintiff. Mitchell is, therefore, liable to Plaintiff and the Class as intended third-party beneficiaries for compensatory and consequential damages flowing from said breaches.

94.     J.D. Power is likewise liable for Mitchell's breach of its Agreement with State Farm based upon its actual involvement with the WCTL Valuation Methodology and its partnership with Mitchell.

95.     This claim applies to all Class Members.

## Count V – Civil Conspiracy
**(Against Defendants State Farm, J.D. Power & Associates and Mitchell International, Inc.)**

96.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 66 as though fully set forth herein.

97.     J.D. Power, Mitchell and State Farm entered into an illicit agreement and conspiracy to utilize WCTL Valuations to provide improper total loss valuations. Specifically, State Farm and Mitchell conspired to underpay Plaintiff and the Class by using WCTL Valuations, which included the aforementioned statistically invalid Five Steps (and sub-steps), which were not intended to calculate the fair value of total loss vehicles, but rather to improperly undervalue total loss claims of State Farm insureds.

98.     J.D. Power is a part of the conspiracy by reason of its partnership with Mitchell and its participation with Mitchell in building the WCTL Valuations for use by State Farm and other insurers. Mitchell's role in the conspiracy is evidenced by its Agreement with State Farm and its partnership with J.D. Power.

99.     State Farm is a part of the conspiracy by reason of having actual knowledge that the WCTL Valuations provided through its partnership with J.D. Power and Mitchell were statically invalid and continuing to utilize the WCTL Valuations when determining the payment of Plaintiff and Class Members' total loss claims.

100.    State Farm's conspiracy with Power and Mitchell to use the invalid WCTL Valuation Methodology deprived Plaintiff and the Class of the proper value of their total losses. The overt acts emanating from Defendants' illicit agreement to so deprive Plaintiff and the Class include, but are not limited to, J.D. Power and Mitchell's undervaluation of Plaintiff's claim

using WCTL Valuations, and State Farm's failure to properly investigate, adjust and pay such claim directly resulting from the WCTL Valuations.

101.   Plaintiff and Class Members have been damaged as a proximate result of Defendants' illicit agreement and conspiracy. Therefore, J.D. Power, Mitchell and State Farm are each liable for the torts of one another arising out of their conspiracy as defined herein, and Plaintiff and Class Members are entitled to recover compensatory and punitive damages against State Farm, J.D. Power and Mitchell.

102.   This claim applies to all Class Members.

### Prayer for Relief

**WHEREFORE,** Plaintiff, Larry Relf, respectfully requests that this Honorable Court, for himself and all Class Members:

A.   Certify the Class alleged herein;

B.   Appoint Plaintiff as Class Representative;

C.   Appoint the undersigned as Class Counsel;

D.   Award Plaintiff and Class Members actual damages in such amount as the Court or Jury may determine;

E.   Award declaratory and injunctive relief as permitted by law;

F.   Award punitive damages as permitted by law;

G.   Award reasonable attorneys' fees, filing fees, expert fees, litigation costs and expenses to counsel based upon the benefit received by Plaintiff and the Class; and

H.   Award Plaintiff and Class Members any additional relief as this Court deems just and proper, including injunctive relief to prohibit State Farm from continuing to utilize WCTL Valuations in Georgia.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all counts for which a trial by jury is permitted by law.

Dated:  December 12, 2018

Respectfully submitted,

**MORGAN & MORGAN, P.A.**

*/s/ R. Walker Garrett*
R. Walker Garrett, Esq. (GA Bar No. 626132)
408 12th Street, Suite 200
Columbus, GA 31901
Telephone: (706) 478-1907
Facsimile: (706) 478-1993
wgarrett@forthepeople.com

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
Jonathan B. Cohen (FL Bar No. 0027620)*
John A. Yanchunis (FL Bar No. 324681)*
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434
jcohen@forthepeople.com
jyanchunis@forthepeople.com

**WALLER LAW OFFICE, PC**
Jonathan H. Waller (GA Bar No. 734550)
2001 Park Place, Suite 900
Birmingham, AL 35203
Telephone: (205) 313-7330
jwaller@waller-law.com

*Attorneys for Plaintiff and the proposed Class*

*\* Pending pro hac vice admission*