EXHIBIT A

2018 WL 4521919
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

Bobby JONES, individually, and on behalf of all others similarly situated, Plaintiff,
v.
PROGRESSIVE CASUALTY INSURANCE COMPANY, et al., Defendants.

Case No. 16-cv-06941-JD
|
Signed 09/19/2018

**Attorneys and Law Firms**

[David Alexander Kleczek](), Kleczek Law Office, [Herbert Paul Bryant](), Law Offices of H. Paul Bryant, Oakland, CA, for Plaintiff.

[Julia Constance Barrett](), [Zachary Andrew McEntyre](), [Jeffrey S. Cashdan](), King and Spalding LLP, Atlanta, GA, [Timothy Tully Scott](), King & Spalding LLP, Palo Alto, CA, [Scott Thomas Schutte](), [Gregory Thomas Fouts](), [Tedd MacRae Warden](), Morgan, Lewis and Bockius LLP, Chicago, IL, [Phillip Jared Wiese](), Morgan, Lewis and Bockius, San Francisco, CA, for Defendants.

### ORDER RE MOTIONS TO DISMISS

Re: Dkt. Nos. 107, 108

[JAMES DONATO](), United States District Judge

 ***1** In this putative class action, named plaintiff Bobby Jones has sued defendants Progressive Casualty Insurance Company and Progressive Select Insurance Company (together, "Progressive"), and Mitchell International, Inc. ("Mitchell"), for fraud and other consumer claims relating to automobile insurance. Dkt. No. 106. Jones alleges that Progressive and Mitchell, a provider of claim services, surreptitiously used low-value salvage vehicles to determine payments to insureds whose cars had been declared a total loss. Two other Progressive entities, Progressive Corporation and Progressive Direct Insurance Company, have been dismissed without prejudice. Dkt. Nos. 95, 115. The remaining defendants move to dismiss the Third Amended Complaint ("TAC") under [Federal Rule of Civil Procedure 12(b)(6)](). Dkt. Nos. 107, 108.

### BACKGROUND

As alleged in the TAC, Jones bought a 1999 Chevrolet Venture in 2015 for $3,250. Dkt. No. 106 ¶ 37. He insured his car with Progressive. *Id.* ¶¶ 3, 43-45, Ex. A. Less than a month after the purchase, Jones got into an accident that totaled the car and sent him and his wife to the hospital. *Id.* ¶ 38. Jones filed an insurance claim with Progressive, which it eventually settled over the "total loss" of his vehicle for $2,800. *Id.* ¶¶ 44, 46, 68.

The complaint focuses on Progressive's and Mitchell's conduct during the claim settlement process. To determine the coverage payment to Jones, Progressive engaged Mitchell to find valuations of "comparable vehicles." *See, e.g.*, *id.* ¶ 49. Progressive gave Jones a search report from Mitchell that stated a value of $2,413.41 for a car of the same year, make, and model as Jones's. *Id.* ¶¶ 49-50. The report did not disclose that the vehicle in the report had a "salvage title," which meant it was itself a total loss. *Id.* ¶ 50. Another report listed other low-valuation comparables from dealerships that Jones alleges were never actually contacted by Mitchell. *Id.* ¶ 52. Jones asked Progressive to use the price of his own vehicle, which he had bought just a few weeks before the accident, but Progressive declined. *Id.* ¶ 64.

Jones says the reports misled him about the value of his claim, and that he relied on them to settle for less than he was entitled to recover. *Id.* ¶¶ 58, 65-69. Jones alleges seven California state law claims on behalf of himself and a putative class of Progressive policyholders in California for fraud, misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, intentional interference with contractual relations, and violations of the Unfair Competition Law, [Cal. Bus. & Prof. Code § 17200 et seq.]() ("UCL") and Consumers Legal Remedies Act, [Cal. Civ. Code § 1770 et seq.]() ("CLRA").[1]

Progressive and Mitchell move to dismiss all the claims against them under [Rule 12(b)(6)](). The Court has jurisdiction under the Class Action Fairness Act, [28 U.S.C. § 1332(d)](), and the motions are granted and denied in part.

## LEGAL STANDARDS

**\*2** Straightforward standards govern the application of Rule 12(b)(6). To meet the pleading requirements of Rule 8(a) and to survive a Rule 12(b)(6) motion to dismiss, a claim must provide "a short and plain statement ... showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), including "enough facts to state a claim ... that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face if, accepting all factual allegations as true and construing them in the light most favorable to the plaintiff, the Court can reasonably infer that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). But the Court will not treat as fact or accept as true allegations that are bare legal conclusions, recitations of elements or unwarranted deductions. Id.; In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). The plausibility analysis is "context-specific" and not only invites but "requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Because some of the claims sound in fraud, Rule 9(b) also applies. Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009); Fed. Trade Comm'n v. D-Link Sys., Inc., No. 3:17-CV-00039-JD, 2017 WL 4150873, at \*2 (N.D. Cal. Sept. 19, 2017). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A "pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." United States ex rel. Anita Silingo v. WellPoint, Inc., No. 16-56400, 2018 WL 4403407, at \*6 (9th Cir. Sept. 11, 2018) (internal quotation and citation omitted); see also McLellan v. Fitbit, Inc., No. 3:16-CV-00036-JD, 2018 WL 2688781, at \*1 (N.D. Cal. June 5, 2018). While conclusory allegations "with no 'particularized supporting detail' do not suffice," the complaint "need not allege a precise time frame, describe in detail a single specific transaction or identify the precise method used to carry out the fraud." McLellan, 2018 WL 2688781, at \*1 (quoting United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1180 (9th Cir. 2016)). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989).

## DISCUSSION

### I. THE CLAIMS AGAINST PROGRESSIVE

#### A. The Contract Claims

Jones has plausibly alleged that Progressive breached the terms of its contract with him. The insurance policy, which is attached to the TAC and incorporated by reference and so may be considered in the motion to dismiss context, *see* Shaw v. Ocwen Loan Servicing, LLC, No. 15-CV-01755-JD, 2016 WL 7048979, at \*2 (N.D. Cal. Dec. 5, 2016), required Progressive to pay him the lowest of several possible values, including the "actual cash value" of his car, which is assessed based on the "market value, age, and condition of the vehicle at the time the loss occurs." Dkt. No. 106, Ex. A at 22-23. Jones plausibly alleges that Progressive breached this obligation by arbitrarily and surreptitiously using a salvage title value to the exclusion of any other comparison. The claim for breach of the implied covenant of good faith and fair dealing goes forward with the contract claim. *See* Graham v. Wells Fargo Bank, N.A., No. 15-CV-04220-JD, 2016 WL 2937501, at \*2 (N.D. Cal. May 20, 2016).

#### B. The Tort Claims

The claims for fraud and misrepresentation present a more nuanced question. Jones says that Progressive misrepresented the value of his car to induce him to accept an artificially low insurance payment. *See* Dkt. No. 106 ¶¶ 99, 104. In Progressive's view, this amounts to seeking tort damages for a breach of the policy, which is barred by the economic loss rule.

Broadly speaking, the economic loss rule is intended to police the boundary between tort and contract damages, and holds that certain damages should be remedied only in contract. *See* Giles v. General Motors Acceptance Corp., 494 F.3d 865, 873-74 (9th Cir. 2007); Apollo Grp., Inc. v. Avnet, Inc., 58 F.3d 477, 479 (9th Cir. 1995) ("[A] plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort. Instead, the claimant is limited to recovery under the law of contract."). The rule was developed in product liability cases, where its application was a relatively easy matter. Giles, 494 F.3d at 873-74; CHMM, LLC v. Freeman

*Marine Equip., Inc.*, 791 F.3d 1059, 1062 (9th Cir. 2015). The export of the rule to other domains, however, "has produced difficulty and confusion." *Giles*, 494 F.3d at 874.

**\*3** As our circuit has observed, much of the difficulty comes from the fact that the rule is often misinterpreted to bar all tort recovery for "purely" economic losses. *Id.* at 874-75. Applying the rule in that fashion makes scant sense because torts like fraud and negligent misrepresentation exist precisely to remedy purely economic losses. *Id.* at 875. For that reason, many state and federal courts have declined to dismiss fraud and misrepresentation claims under the rule. *Id.* (and cases cited therein). But many other courts have applied the rule very broadly, which has led to considerable tension in the case law. *See, e.g.*, *Apollo Grp.*, 58 F.3d at 480 n.3 (finding "no consensus among courts" considering whether negligent misrepresentation is an exception to the economic loss rule).

In California, the "economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). In the insurance context, the California Supreme Court has determined that, "when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort." *Jonathan Neil & Assoc., Inc. v. Jones*, 33 Cal. 4th 917, 938 (2004) (internal quote omitted). "The actionable withholding of benefits may consist of the denial of benefits due; paying less than due; and/or unreasonably delaying payments due." *Major v. Western Homes Ins. Co.*, 169 Cal. App. 4th 1197, 1209 (2009) (quotations and citations omitted). " '[B]ad faith' does not connote positive misconduct of a malicious or immoral nature; it simply means the insurer acted deliberately." *Id.* (quotation and citation omitted). The insured need only "show that the insurer has (1) withheld benefits due under the policy, and (2) that such withholding was 'unreasonable' or 'without proper cause.' " *Id.* (quoting *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 574 (1973) ). Tort damages may be pursued for breach of the covenant of good faith and fair dealing in insurance contracts. *See id.*; *Jonathan Neil*, 33 Cal. 4th at 937-38.

These authorities indicate that the economic loss rule, as interpreted in California for insurance coverage disputes, does not bar the fraud claims against Progressive. Jones alleges that Progressive knowingly and intentionally misrepresented or concealed facts to defraud him of the fair coverage value of his lost vehicle. Those claims entail duties and facts independent of the breach of contract claim, or any disappointed contractual expectations, and focus on the type of "behavior that goes to the heart of the special insurance relationship and gives rise to tort remedies." *Jonathan Neil*, 33 Cal. 4th at 940.

Turning to the adequacy of the fraud claims under Rule 9(b), Progressive contends that Jones did not sufficiently plead reliance. To the contrary, the TAC expressly alleges that Jones relied on the valuation statements and reports provided by Progressive to accept the payment it tendered. *See, e.g.,* Dkt. No. 106 ¶¶ 50-54, 58-59, 64-69. Jones provides enough specificity about the reports and statements he alleges were false or misleading to give fair notice of the claim. Progressive challenges the veracity of these allegations, but that question is reserved for summary judgment or trial.

**C. The UCL Claim**

The UCL claim will also go forward. The UCL defines "unfair competition" to include "any 'unlawful, unfair or fraudulent business act or practice.' " *Rosell v. Wells Fargo Bank, N.A.*, No. 12-CV-06321-JD, 2014 WL 4063050, at \*5 (N.D. Cal. Aug. 15, 2014) (quoting Bus. & Prof. Code § 17200). The statute's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (quotation and citation omitted). "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Id.* (quotation and citation omitted). Conduct that is independently actionable under some other law can form the basis of a UCL claim. *Rosell*, 2014 WL 4063050, at \*5-6.

**\*4** Jones's UCL claim is predicated on the fraud and misrepresentations claims that Progressive settled coverage claims on the basis of misleading valuation reports. *See* Dkt. No. 106 ¶ 92. That is enough under the UCL.

Progressive's argument under the Unfair Insurance Practices Act (UIPA), Cal. Ins. Code § 790.03, does not

change this conclusion. The UIPA defines a number of unfair methods of competition and unfair and deceptive acts or practices in the business of insurance. The statute does not grant a private right to sue, and the California Supreme Court has warned against UIPA claims dressed in other robes. See *Moradi-Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal. 3d 287 (1988); *Zhang v. Superior Court*, 57 Cal. 4th 364, 369 (2013). Nevertheless, claims premised on fraud and breach of contract may proceed under the UCL even if the relevant conduct arguably violated the UIPA. *Zhang*, 57 Cal. 4th at 369; *see also Diaz v. First Am. Home Buyers Prot. Corp.*, 541 F. App'x 773, 775 (9th Cir. 2013) (citing *Zhang*, 57 Cal. 4th at 384). The UCL claim fits comfortably within these parameters, and so dismissal is denied.

### D. The CLRA Claim

The CLRA claim is a different matter. The CLRA allows consumers injured by certain unlawful business practices to recover damages. Cal. Civ. Code §§ 1770, 1780(a). Before a consumer may sue, she must provide the defendant written notice of the alleged violations by certified mail and demand that the defendant "correct, repair, replace, or otherwise rectify the goods or services alleged to" violate the CLRA. *Id.* § 1782(a). And once a complaint is filed, it must be accompanied by "an affidavit stating facts showing that the action has been commenced" in the proper county. *Id.* § 1780(d). "If a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss the action without prejudice." *Id.*

Jones acknowledges that he did not comply with these procedural requirements but says he should be excused because defendants had "actual notice of the claims against them." Dkt. No. 111 at 14. That is a questionable proposition because the TAC is the first complaint to assert a CLRA claim. In any event, the statute requires "a literal application of the notice provisions." *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 41 (1975). Consequently, the CLRA claim is dismissed.

### II. THE CLAIMS AGAINST MITCHELL

In contrast to Progressive, the claims against Mitchell are not sufficiently plausible to go forward. To start, the complaint generally lumps Mitchell together with Progressive, with no meaningful distinctions drawn between them. That will not do. "To satisfy Rule 9(b), a fraud suit against differently situated defendants must 'identify the role of each defendant in the alleged fraudulent scheme.' " *WellPoint*, 2018 WL 4403407, at *7 (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) ). This problem is all the more striking in the TAC because Jones was advised before filing it to clarify the misrepresentations attributable to Mitchell. 10/26/2017 Hr'g Tr. at 15:13-16:6.

The plausibility of the claims against Mitchell is further undermined by an overall lack of facts. Jones says Mitchell misled him because (1) its reports did not disclose that the comparable vehicles had salvage titles, and (2) the reports included cars from dealers that Mitchell never actually consulted. *Id.* ¶¶ 49-52. But even taking these allegations as true for 12(b)(6) purposes, they do not adequately allege fraud or misrepresentation claims. Mitchell was a third-party vendor acting at the direction of Progressive, providing it with analytical reports that Progressive then chose to use in its negotiations with Jones. *Id.* ¶¶ 8, 17, 57-59, 64, 67. Progressive, not Mitchell, decided to share copies of the reports with him. *Id.* ¶¶ 27, 56-58. Nowhere does Jones allege that Mitchell promised him anything about the nature, scope, or contents of the reports. Similarly, the cursory reference to a phone call between Jones and a Mitchell representative does not support his claims. The lone allegation that an unnamed Mitchell representative on an unspecified date "stood by" dealer quotes and said it "could not consider a vehicle submitted by the insured," *id.* ¶ 53, is too vague for Rule 9(b) purposes and does not allow an inference that Mitchell made misrepresentations to Jones.

**\*5** Consequently, the fraud and misrepresentation claims against Mitchell are dismissed. The UCL claim, which is predicated on the same conduct, is dismissed for the same reason.

The TAC also does not state enough for the intentional interference with contact claim. The elements of intentional interference are: " '(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.' " *United Nat. Maintenance, Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1006 (9th Cir. 2014) (quoting *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.

[3d 1118, 1126 (1990)](link) ). "It is generally not a requirement that 'the defendant's conduct be wrongful apart from the interference with the contract itself.' " *[Redfearn v. Trader Joe's Co.](link)*, 20 Cal. App. 5th 989, 997 (2018) (quoting *[Quelimane Co. v. Stewart Title Guarantee Co.](link)*, 19 Cal. 4th 26, 55 (1998) ).

Jones does not plausibly allege that Mitchell intended to breach or disrupt his insurance contract with Progressive, or knew its actions would likely lead to that result. Setting aside the entirely conclusory allegations that Progressive and Mitchell conspired to harm him, which bear no weight under *Twombly* and *Iqbal, see, e.g.*, Dkt. No. 106 ¶¶ 9-12, 24, 31-36, Jones says only that Mitchell, as an outside claims services provider, generated comparative reports at Progressive's direction. That is not enough. Even assuming the reports were misleading, Jones provides no facts plausibly stating that Mitchell intended to disrupt his policy with Progressive, or knew that interference was likely to occur. See *[Quelimane Co.](link)*, 19 Cal. 4th at 56. The claim is dismissed.

The CLRA claim against Mitchell suffers from the same procedural deficiencies as the one against Progressive. It too is dismissed.

## CONCLUSION

The CLRA claim against Progressive is dismissed without prejudice. Progressive's motion to dismiss is denied in all other respects. Because the TAC is the fourth complaint in this case, the Court will not automatically grant further leave to amend for the CLRA. Jones has had ample opportunity to tee up that claim. If future circumstances warrant, he may file a motion for leave to amend.

Mitchell's motion to dismiss is granted, and all claims against it are dismissed without prejudice. Because this is the fourth time around on the complaint, the Court would be well within its discretion to dismiss with prejudice. Even so, the Court indicated at the hearing that it would dismiss without prejudice and allow Jones to request leave to amend if warranted by discovery. The Court will stick with that course of action.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2018 WL 4521919

---

Footnotes

1   The TAC's seventh claim is under the "California Consumer Remedies Act." Based on Jones's oppositions to the motions to dismiss, it is clear he meant the CLRA.

---

**End of Document** © 2018 Thomson Reuters. No claim to original U.S. Government Works.