IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| LARRY RELF, on behalf of himself and all others similarly situated, | * * |
| Plaintiff, | * |
| vs. | * |
| | CASE NO. 4:18-CV-240 (CDL) |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, J.D. POWER & ASSOCIATES, and MITCHELL INTERNATIONAL, INC., | * * * |
| Defendants. | * * |

O R D E R

When Larry Relf wrecked his 2006 Pontiac Torrent, he was insured with State Farm Mutual Automobile Insurance Company. Determining that the car was a total loss, State Farm sent Larry a check in the amount of $5,848.22, which it concluded was the actual cash value of the Pontiac less Larry's deductible. Larry accepted. Almost four years later, a lawyer apparently convinced Larry that he had been paid $298.77 less than he was legally entitled to under his insurance contract with State Farm. Larry (and his lawyers) now claim that many other State Farm insureds have been similarly cheated, and they have filed this class action seeking justice (and of course dollars) for these people. But Larry waited too long to file his claim against State Farm, and thus that claim must be dismissed.

Because it was clear that Larry's claim against State Farm was futile due to untimeliness when Larry first filed his action in this Court and thus no reasonable expectation existed that the proposed class would be certified, subject matter jurisdiction cannot be based upon 28 U.S.C. § 1332(d)(2). With no other basis for federal subject matter jurisdiction, the claims against the other Defendants in this action, J.D. Power Associates and Mitchell International, Inc., must also be dismissed. Accordingly, this action is dismissed in its entirety.

**I. Plaintiff's Claims Against State Farm are Untimely and Otherwise Fail to State a Claim**

Plaintiff alleges that State Farm breached the insurance policy by failing to pay the actual cash value of his vehicle. The policy, which the parties acknowledge is part of the pleadings for purposes of the pending motion to dismiss, clearly requires that "legal action may only be brought against [State Farm] regarding . . . Physical Damage Coverages if the legal action relating to these coverages is brought against *us* within one year immediately following the date of the accident or *loss*." State Farm Mot. to Dismiss Ex. A, Policy 37, ECF No. 18-2. Plaintiff's date of loss was December 14, 2014. Compl. ¶ 49, ECF No. 1. Plaintiff did not file this action until nearly four years later, on December 12, 2018.

Plaintiff argues that the one-year limitation period does not apply to his claim because the policy also stated, "If any provisions of this policy are in conflict with the statutes of Georgia, they are amended to conform to these statutes." Policy 36. Plaintiff argues that based on this provision, Georgia's six-year statute of limitations for actions upon simple contracts applies. *See* O.C.G.A. § 9-3-24. In support of this argument, Plaintiff relies on *Queen Tufting Co. v. Fireman's Fund Insurance Co.*, 239 S.E.2d 27 (Ga. 1977) and *Dr. Roger Abbott, Inc. v. State Farm Fire & Cas. Co.*, No. 1:15-CV-00201-LMM, 2016 WL 4592172 (N.D. Ga. Jan. 5, 2016). Both cases are distinguishable on the facts. In *Queen Tufting Co.*, the contract stated, "No suit or action on this policy for the recovery of any claim shall be sustainable in any Court of law or equity unless . . . commenced within twelve (12) months next after the happening of the loss, *unless a longer period of time is provided by applicable statute*." *Queen Tufting Co.*, 239 S.E.2d at 28 (emphasis added). And in *Dr. Roger Abbott, Inc.*, the policy stated, "No one may bring legal action against us under this insurance unless . . . the action is brought within two years after the date on which the accidental direct physical loss occurred. *But if the law of the state in which this policy is issued allows more than two years to bring legal action against us, that longer period of time will apply*." 2016 WL

3

4592172, at *2 (emphasis added). Thus, these cases establish that where certain amendatory language is contained in a limitations clause itself, then the longer statutory limitations period governs. But the State Farm policy at issue here does not contain such language.

The Georgia courts have rejected arguments like Plaintiff's when the contract does not contain amendatory language that explicitly refers to statutes of limitation. If a contract contains a limitations clause and a separate amendatory clause that does not explicitly refer to the statute of limitations, then the contract's limitation period is generally enforceable. For example, in *Gravely v. Southern Trust Insurance Co.*, 258 S.E.2d 753 (Ga. Ct. App. 1979), the Georgia Court of Appeals concluded that a twelve-month limitation period was enforceable and not in conflict with Georgia's six-year statute of limitations for contract claims. The contract in *Gravely* had a general "conformity with statute" clause similar to the one in Plaintiff's State Farm policy, but it lacked the "special language" of the contract in *Queen Tufting Co.*, so the general "conformity with statute" clause did not extend the statute of limitations. 258 S.E.2d at 754; *see also Nicholson v. Nationwide Mut. Fire Ins. Co.*, 517 F. Supp. 1046, 1050 (N.D. Ga. 1981) (following *Gravely* and concluding that a twelve-month limitation period was enforceable despite general "conforming

4

language"). The Court finds that *Gravely* controls. Therefore, the one-year limitation set forth in the policy applies.

Plaintiff argues that even if the one-year limitation period applies, there is a fact question on whether State Farm waived it or is estopped from asserting it, so this issue should be deferred until the summary judgment stage. "An insurer can be held to have waived a limitation period when its investigations, negotiations, or assurances up to and past the period of limitation led the insured to believe the limitation would not apply." *Gilbert v. S. Tr. Ins. Co.*, 555 S.E.2d 69, 72 (Ga. Ct. App. 2001) (quoting *Cotton States Mut. Ins. Co. v. Walker*, 500 S.E.2d 587, 590 (Ga. Ct. App. 1998)) (finding that there was evidence from which a jury could conclude that an insurance company waived strict compliance with the insured's time limit for designating an appraiser). For example, if an insurer admits liability and "continually discusse[s] the loss with its insured with a view toward negotiation and settlement without the intervention of a suit," then there is a fact question on whether this conduct "lulled the insured into" believing that the insurer waived the policy's limitation period. *Auto-Owners Ins. Co. v. Ogden*, 569 S.E.2d 833, 835 (Ga. 2002); *accord Brown Transp. Corp. v. James*, 257 S.E.2d 242, 243 (Ga. 1979) ("[W]here an employee relies on the statements of his employer or the insurance carrier, who are in a position of

5

authority, that he will be taken care of, that all is well and he needn't worry, it is going too far then to allow them to raise as a bar to his claim the employee's failure to file within one year."); *Giles v. Nationwide Mut. Fire Ins. Co.*, 405 S.E.2d 112, 114 (Ga. Ct. App. 1991) ("If the insurer makes direct promises to pay or if settlement negotiations have lead [sic] the insured to believe that the claim will be paid without litigation, the time requirement is waived."). "But, 'mere negotiation for settlement, unsuccessfully accomplished, is not that type of conduct designed to lull the claimant into a false sense of security so as to constitute' a waiver of the limitation defense." *Ga. Farm Bureau Mut. Ins. Co. v. Pawlowski*, 643 S.E.2d 239, 241 (Ga. Ct. App. 2007) (quoting *Giles*, 405 S.E.2d at 114) (concluding that the insurance company's investigation of the insureds' claim and its offer to settle that was rejected as insufficient did not suggest that the insurance company "tried to trick the [insureds] into believing that it intended to enlarge the one-year limitation period").

Plaintiff relies on *Thompson v. State Farm Fire & Casualty Co.*, 264 F. Supp. 3d 1302 (M.D. Ga. 2017) (Treadwell, J.). In that case, the insureds had a homeowners insurance policy that covered diminished value. Though the insurer was contractually obligated to adjust all losses with the insureds and though the

6

insurer "communicated to its insureds what was purported to be a full disclosure of their coverage," the insurer "omitted any mention of diminished value." *Id.* at 1321. Judge Treadwell concluded that there was evidence to suggest that the insurer "systematically hid from its insureds their rights . . . to recover compensation for the diminished value of their damaged property." *Id.* at 1321-22. Judge Treadwell further found that based on this conduct, a jury could conclude that the insurer had waived the one-year limitation by representing that it intended to pay the claim without suit even though it did not actually intend to pay the entire claim.

Here, however, Plaintiff makes no specific factual allegations that he abstained from filing suit during the one-year limitation period based on conduct by State Farm. Plaintiff does allege that State Farm used a "statistically invalid" total loss valuation methodology to determine the value of his loss, that State Farm underpaid his total loss claim by using a "statistically invalid downward condition adjustment," and that State Farm concealed from him that its total loss valuations were "statistically invalid and unlawful." Compl. ¶¶ 42, 51-52. But these factual allegations do not plausibly suggest that State Farm's conduct during its adjustment of Plaintiff's claim amounted to a waiver of its right to rely upon the one-year limitation in the policy. Unlike in *Thompson*,

7

there is no plausible allegation that State Farm hid from Relf the right to recover a component of his covered claim. State Farm did not conceal its evaluation. Plaintiff's Total Loss Report disclosed that the $298.77 condition adjustment was made because the condition of Plaintiff's vehicle scored 2.81 compared to a 3.02 for a typical vehicle. Compl. Ex. B, Total Loss Report 3, ECF No. 1-6. The report further explained that the condition of the vehicle's seats and tires were found to be "fair" and not "good." *Id.* at 4. Therefore, Plaintiff knew State Farm's stated reasons for making the downward condition adjustment, and he knew how State Farm claimed to have arrived at the "market value" and "settlement value." Furthermore, if Plaintiff disagreed with this evaluation, he had an opportunity to challenge it under the policy terms. *See* Policy 23 ("The owner of the *covered vehicle* and [State Farm] must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by appraisal upon written request of the owner or [State Farm.]"). In summary, because the factual allegations in Plaintiff's complaint establish that his breach of contract claim against State Farm is untimely, that claim must be dismissed.

Obviously, if Plaintiff's breach of contract claim fails as a matter of law, his bad faith claim likewise fails. But even

8

if his breach of contract claim was timely, his bad faith claim would still fail. Plaintiff concedes that "he did not allege the requisite 60-day notice to State Farm required by O.C.G.A. § 33-4-6, and, as that procedural hurdle is strictly construed by Georgia courts, he does not oppose the dismissal of the bad faith claim." Pl.'s Resp. to State Farm's Mot. to Dismiss 2 n.1, ECF No. 27. Plaintiff's bad faith claim against State Farm is thus dismissed.

Although Plaintiff's civil conspiracy claim against State Farm may survive a timeliness challenge, it is fundamentally flawed. The basis for that claim is the alleged tortious interference with the contract between Plaintiff and State Farm. *See* Pl.'s Resp. to State Farm's Mot. to Dismiss 18, ECF No. 27. Under Georgia law, "[t]ortious interference with a business relationship is a cause of action for which proof of a civil conspiracy will expand liability among all co-conspirators." *Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Cmty. Tr.*, 780 S.E.2d 311, 318 (Ga. 2015). But, to be liable for tortious interference with a contract, "one must be a stranger to the business relationship giving rise to and underpinning the contract." *Cook Pecan Co. v. McDaniel*, 810 S.E.2d 186, 190 (Ga. Ct. App. 2018); *accord Icthus Cmty. Tr.*, 780 S.E.2d at 321 (noting that the first element of a tortious interference claim is that "the defendant is a stranger to the business

relationship"). State Farm was not a stranger to its insurance contract with Plaintiff. Therefore, it could not tortiously interfere with the contract or conspire to do so. *Mabra v. SF, Inc.*, 728 S.E.2d 737, 741 (Ga. Ct. App. 2012) (concluding that conspiracy claim based on tortious interference failed because there was no "basis in law for the underlying tortious interference claims"). Accordingly, Plaintiff's civil conspiracy claim against State Farm must be dismissed. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (requiring that a complaint contain must contain "enough facts to state a claim to relief that is plausible on its face").

Based on the foregoing, the Court grants State Farm's motion to dismiss all of Plaintiff's claims against it.

**II. Plaintiff's Claims Against J.D. Power and Mitchell Must Be Dismissed for Lack of Subject Matter Jurisdiction**

In addition to State Farm, Plaintiff also alleges claims against J.D. Power Associates and Mitchell International, Inc. Neither Defendant argued that these claims are untimely. Plaintiff alleges that J.D. Power and Mitchell conspired with and assisted State Farm in its effort to under-value the claims of its insureds. The class that Plaintiff seeks to certify and represent consists of State Farm insureds who presented claims that were evaluated using the valuation tool developed by J.D. Power and Mitchell. The thrust of the class claims is that

State Farm underpaid claims to its insureds with the help of J.D. Power and Mitchell. State Farm's alleged liability is essential to this putative class action.

Plaintiff alleged subject matter jurisdiction under 28 U.S.C. § 1332(d) based solely on this action proceeding as a class action against all Defendants, including State Farm. Compl. ¶ 14. With Plaintiff's claims against State Farm now dismissed, it is clear that this action is not the one that Plaintiff initially sought to pursue as a class action. It is also clear to the Court that based on the pleadings, including the policy's clear one-year limitations period that bars Plaintiff's claims against State Farm, Plaintiff's claims lack the expectation that a class may eventually be certified as pled. For these reasons, the Court finds that it lacks jurisdiction under 28 U.S.C. § 1332(d). *Cf. Wright Transportation, Inc. v. Pilot Corp.*, 841 F.3d 1266, 1271 (11th Cir. 2016) ("Class-action claims filed in or removed to federal court under CAFA can be dismissed for lack of jurisdiction if those claims contain frivolous attempts to invoke CAFA jurisdiction or lack the expectation that a class may be eventually certified."). Furthermore, no independent basis for jurisdiction exists for Plaintiff's individual claims against J.D. Power and Mitchell because of the amount in controversy, which, according to the Complaint, is $298.77. Compl. ¶ 52.

Accordingly, the claims against J.D. Power and Mitchell are dismissed for lack of subject matter jurisdiction.[1]

CONCLUSION

As discussed above, State Farm's motion to dismiss (ECF No. 18) is granted, and the claims against J.D. Power and Mitchell are dismissed for lack of subject matter jurisdiction.

IT IS SO ORDERED, this 20th day of June, 2019.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[1] The Court must always be vigilant to ensure that it has subject matter jurisdiction; thus, *sua sponte* dismissal is appropriate. *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) ("[A] court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings. Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking.") (quoting *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999))).